UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TA SETI,

           Plaintiff,

     v.

JIM ROBERTSON, et al.,

           Defendants.

Case No.  23-cv-00289-JSC

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 29

## INTRODUCTION

Plaintiff, a California prisoner proceeding without attorney representation, filed this civil rights complaint under 42 U.S.C. § 1983 against officials at Pelican Bay State Prison ("PBSP"). The amended complaint (ECF No. 18) is the operative complaint.  The remaining claims are against the following PBSP officials: Warden Jim Robertson, Sergeant Silva, Chief Deputy Warden R. Bell, and Associate Wardens K. Osborne, A. Pepiot, D. Barneburg, C. Parry, and T. Lemos ("Defendants")[1].  (*See* ECF No. 17.)  Defendants filed a motion for summary judgment, Plaintiff filed an opposition, and Defendants replied.[2]  (ECF Nos. 27, 37, 38.)  For the reasons discussed below, the motion for summary judgment is GRANTED.

## BACKGROUND

Plaintiff is, and at the relevant times was, housed in PBSP's Level IV facility, which is the highest general population security unit.  (ECF No. 27-9 at ¶¶ 7, 10.)  In his verified amended complaint,[3] Plaintiff complains Defendants allowed strip searches of inmates to be conducted in

---

[1] Defendant C. Parry was improperly sued as O. Parry. Defendant D. Barneburg was improperly sued as P. Barneburg.  (ECF No. 27 at 7, n.1.)

[2] Plaintiff filed an additional opposition after Defendants replied.  (ECF No. 39.)  This opposition simply attaches copies of administrative appeal decisions Defendants had already submitted. (*Compare* ECF No. 39 at 3-4, 8 *and* ECF Nos. 27-7 at 9-10, 20.)

[3] A "verified" complaint, meaning one sworn under penalty of perjury, may be used as an

United States District Court
Northern District of California

the presence of other inmates, as well as female and male officers, and did not provide privacy

barriers around toilets in the cells.  (ECF No. 18 at ¶¶ 28-32.)

1. Searches

The verified amended complaint describes three strip searches of him during building-wide

searches of inmates.  (ECF No. 18 at ¶¶ 28-30; ECF No. 27-7 at 9 ("part of . . . mass building

search").)  According to Plaintiff, during these searches, inmates were "forced to open there [sic]

butt holes right in front of one another, as well as reviel [sic] their penises, foreskins and testicles."

(ECF No. 18 at ¶ 31.)

On November 6, 2022, Plaintiff "and other inmates were stripped searched right in front of

each other in the frame of the cell do[or]s by about a dozen officers or so, including two female

officers."  (ECF No. 18 at ¶ 28.)  The search took place in the entryway of his cell; he did not have

a cellmate, but an unspecified number of other inmates were behind the officers.  (ECF No. 27-1 at

77:1-5; 78:1-4, 14-17; 117:5-11.)  In his deposition, Plaintiff testified one female officer was in

the tower and one was on the floor.[4]  (*Id.* at 78:7-13.)  He indicated they looked at him but did not

touch him or give him orders while he was naked.  (*Id.* at 40-41, 78:10-12, 93:24-94:1.)

On November 28, 2022, Plaintiff "and other inmates were stripped searched right in front

of each other again, only this time there were no female officers."  (ECF No. 18 at ¶ 29.)

According to Plaintiff, this search took place inside his cell, he did not have a cellmate, and the

cell's see-through door was closed.  (ECF No. 27-1 at 9, 102:25-103:2, 117:5-11.)

On December 30, 2022, Plaintiff "and other prisoners were stripped searched inside their

cell[s] right in front of each other by about a dozen officers or so, including two female officers,

---

opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth
specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11
(9th Cir. 1995.)  Plaintiff includes factual allegations in his opposition (ECF No. 37 at 2-3), but the
opposition is not verified, which means those facts are not considered evidence.  Plaintiff did not
submit a declaration, but Defendants submitted a transcript of his deposition.  (ECF No. 27-1 at
58-152.)

[4] Plaintiff identified the female officer on the floor as Officer Diaz (ECF No. 27-1 at 93:20-23),
but did not know the name of the other officer.  (*Id*. at 93:14-16.)  Neither officer is a defendant.
Officer Diaz denies being part of the search or ever intentionally looking at Plaintiff naked.  (ECF
No. 27-4 at ¶¶ 2-3.)

one by the name of Ms. Valdez."[5]  (ECF No. 18 at ¶ 30.)  Plaintiff did not have a cellmate.  (ECF No. 27-1 at 117:5-11.)  The two female officers were "walking past" and "glancing" at him during the strip search.  (*Id.* at 109:4-24.)  They did not touch him or give him orders during the search.  (*Id.* at 112:25-113:11.)

The only Defendant present during any of these searches was Defendant Silva, who is male.  (ECF No. 27-9 at ¶ 12; ECF Nos. 27-8 at ¶ 11; 27-5, 27-6, 27-11, 27-14, 27-13 at ¶ 4.)  He was "present during" but "not personally involved in conducting" the first two searches; he was not present for the third search.  (*Id.*)

Defendants have presented evidence regarding the strip search policies.  The federal regulations implementing the 2003 Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301 et seq., addressing strip searches, provide a prison "shall not conduct cross-gender strip searches or cross-gender visual body cavity searches (meaning a search of the anal or genital opening) except in exigent circumstances or when performed by medical practitioners."  28 C.F.R. § 115.15(a).  These requirements are implemented within the California Department of Corrections and Rehabilitation ("CDCR") through the Department Operations Manual ("DOM") Section 52050.16.5, which allows nonmedical cross-gender searches only in exigent circumstances.  (ECF No. 27-9 at 7-8.)[6]  Additionally, according to Defendants Silva and Robertson, PBSP policy

_____

[5] Officer Valdez and the unidentified officers are not defendants.  Officer Valdez denies participating in the search or intentionally looking at Plaintiff naked.  (ECF No. 27-10 at ¶¶ 2-3.)
[6] Section 52050.16.5 states:
          Unclothed Body Searches:
          • Correctional personnel, other than qualified medical staff, shall not conduct unclothed body inspections or searches of an inmate of the opposite sex, except in an emergency.
          • Inmates assigned to designated areas, (i.e., vocational programs, industries, plant operations, warehouse, outside crews, etc.), may be subject to unclothed body searches before returning to the institution's general population.
          • Routine unclothed body searches shall be conducted in a safe manner and in an area that allows the inmate to preserve some measure of dignity and self-respect. Routine unclothed body searches shall not be completed by staff of the opposite biological sex.
          • The inmates shall be required to remove all articles from their pockets. All articles shall be inspected by staff. If it is suspected that an inmate is in possession of dangerous contraband, the inmate shall be detained and closely observed until there is sufficient staff to

1    provides "if a female officer is present during a strip search, they are required to turn away from

2    the inmates until the strip search is completed." (*Id.* at ¶ 5; ECF No. 27-8 at ¶ 6.) PBSP officers

3    are trained on these search procedures annually. (ECF No. 27-3 at ¶¶ 9-10.)

4         Robertson testifies the layout of the section of PBSP where Plaintiff is housed "requires

5    that inmates be searched either within their cells or out in the hallway." (ECF No. 27-8 at ¶ 9.)

6    "Due to security and staffing concerns, it would be impossible to remove each inmate and take

7    them to private cells to conduct unclothed body searches." (*Id.*) When the search is inside the

8    cell, "sometimes" the door is open, and sometimes the door is closed and the search is done

9    through the food port. (*Id.* at ¶ 10.) Only male officers conduct these searches, and any cell-mate

10   who is present is "asked to turn around while the search occurs." (*Id.*) No "physical interaction"

11   occurs between the officer and the inmate during a search. (*Id.*)

12        2. Privacy Barriers

13        In the verified amended complaint, Plaintiff alleges "prisoners are forced to show each

14   other their penisis [sic], testicles, posteriors, and posterior cracks every day because their [sic] are

15   no crotch level privacy barriers on the side of the toilet inside the cell," and "there are also crotch

United States District Court
Northern District of California

_____

conduct a "safe" search. In this circumstance, the staff member conducting the search shall initially conduct a clothed body search and remove all articles from the inmate's person rather than allow the inmate to remove them.
• The inmate shall then completely disrobe. Staff shall inspect and search each item of clothing and visually inspect the inmate's body.
• The inmate shall face the staff member who shall visually inspect the inmate's hair, ears, mouth, nose, body, armpits, hands, scrotum, genitals, and legs. The inmate shall turn away from staff upon instruction and staff shall then inspect the inmate's back, buttocks, thighs, toes, bottom of the feet, and lastly, the anal area by having the inmate bend over, spread the cheeks of their buttocks, and cough.
• Unclothed body searches of inmates by staff of the opposite biological sex shall only be conducted in emergency situations. If a cross gender unclothed body search is required, the search shall be documented. This documentation shall be completed utilizing a Notice of Unusual Occurrence which shall be reviewed by the supervisor and routed to the institutional PCM. The PCM shall retain the completed document, in accordance with the Records Retention Schedule, for audit purposes.

(ECF No. 27-9 at 7-8.)

level windows and a see-through do[or] right in front of the cells['] toilet that are open to all prisoners to look into when they pass by." (ECF No. 18 at ¶ 32).  According to Plaintiff, he and other inmates "made attempts at informing Defendants the privacy barriers "are a right, and serve the purpose of preventing and discouraging sexual incounters amungs [sic] prisoners" and "unwanted inmate on inmate sexual encounters" (ECF No. 18. at ¶¶ 34, 37), but Defendants have "done nothing" (*id.* at ¶ 35).

Plaintiff alleges there are privacy barriers in bathrooms outside of the cells at PBSP.  (*Id.* at ¶ 32.)  It is not entirely clear where in the prison; in his amended complaint, he states they are "throughout" the prison (*id.*), and in his deposition he testified they are in the bathrooms in "the unit" and in the "the recreational room on the small yard" (ECF No. 27-1 at 119:10-13).  Plaintiff testified in his deposition crotch-level barriers similar to those used in other parts of the prison would not present a security risk if installed inside cells because they would not obstruct the view of PBSP officers more than "the table or the desk."  (ECF No. 27-1 at 119:19-120:14.)  Plaintiff testified he has seen "a few" in-cell privacy barriers in other institutions, but cannot identify which jail or prison had them.  (ECF No. 27-1 at 119:6-10 ("I've been coming to jail since I was 12 and I can't remember vividly exactly where and what place I was at, but I've been in a few different cells where there were a privacy barrier.").)

DOM section 54040.4 states, in pertinent part, "Except in circumstances where there would be an impact to safety and security, modesty screens shall be placed strategically in areas that prevent incidental viewing." (ECF No. 27-3 at 15 (Ex. 2).)  Defendants Robertson, Barneberg, Osborne, Parry, Pepiot, Bell, Lemos, and non-defendant Lieutenant Coppin[7] state in-cell privacy barriers present an "unacceptable security risk" because

> [a] barrier placed between the toilet and the beds, whether permanent or adjustable, would create an area that officers could not see from outside the cell. [] Within the Level IV security setting [Plaintiff's housing area], privacy screens would present an unreasonable safety risk for officers and would provide inmates the ability to conceal activities or items that would violate CDCR polices. Providing such a large zone that cannot be viewed by officers without entering the cell would severely endanger officers

---

[7] Lieutenant Coppin is a PBSP supervisor who is not a defendant.

United States District Court
Northern District of California

while only providing minimal privacy to the inmates.

(ECF No. 27-8 at ¶¶ 12-13; *see also* ECF Nos. 27-2, 27-3, 27-5, 27-6, 27-11, 27-13, 27-14 at ¶¶ 5-6 (same).)  According to Robertson and Lieutenant Coppin, in-cell privacy barriers are not mandated by DOM Section 54040.4 because they would "greatly impact safety," and no prison within CDCR has them.  (ECF Nos. 27-3 at ¶¶ 7-8; 27-8 at ¶ 14.)

### 3.  Sexual Assault, Sexual Coercion, and Sexual Harassment

Plaintiff claims the body cavity searches and lack of in-cell privacy barriers around the toilets is an "open sexual nature that PBSP imposes on the inmates" and it "creates[] and sets the stage for sexual harassment, sexual coercion, sexual assault, and rape" at the hands of other prisoners.[8]  (ECF No. 18 at ¶ 33; *see also id.* at ¶ 2.)

In his deposition, Plaintiff testified other inmates made "open comments" and "verbal harassment" and "coercion" following the three strip searches, (EFC No. 27-3 at 126:3-9, 130:24-131:15,) which he described as follows:

> Well, the coercion is – half – it's kind of left to be interpreted
> because the nature of prison, and I hate to continue to say this, but
> the nature of prison, it's so openly sexual that another man can -- if -
> - I apologize. I don't want to cuss, but another man can tell another
> man that he will bend him over and fuck him in his ass, and it is to
> be interpreted by the other man whether he's serious or not.
> But these kind of things happen more so around the times that there
> are strip searches, and other prisoners get a chance to see the size of
> other prisoners' penises or whether they're circumcised or
> uncircumcised or how they bent over and coughed, for example.
> That's a big thing. When you bend over and you open up your butt
> cheeks and you cough, and that -- or when you lift your nuts, that's -
> - those are the kind of topics that are overly talked about openly
> after strip searches, and I experience them as well as other prisoners.

(*Id.* at 131:15-132:10; *see also id.* at 118:13-15 ("bantering of prisoners being openly sexual with each other, making comments against each other, saying what they'll do to each other").)

Plaintiff testified he was sexually assaulted, but not because of the strip searches, but rather because of the lack of in-cell privacy barriers around the toilet.  (*Id.* at 133:24-134:10.)[9]  Between

---

[8] Plaintiff admits no CDCR official has sexually harassed, sexually assaulted, or sexually coerced him as a result of the strip searches or lack of in-cell privacy barriers.  (ECF No. 27-1 at 52-53.)

[9] The Court interprets the following exchange as Plaintiff saying the lack of privacy barriers, not the strip searches, caused him to be sexually assaulted:

Q: However, you also allege that you've experienced sexual assaults

1    "the last week of October 2021" and December 6, 2021, he endured "many unwanted sexual

2    encounters" from his cellmate.  (*Id.* at 12, 116:6-117:1.)  According to Plaintiff, "the first

3    unwanted sexual encounter occurred" because after a few times of me using the bathroom, [my

4    cellmate] comment[ed] on my private parts."[10]  (*Id.* at 135:4-7.)  On December 6, 2021, he was

5    moved to a different cell without a cellmate, and he has not "since" had a cellmate or been

6    sexually assaulted.  (*Id.* at 115:24-116:10, 118:2-20.)

7         Plaintiff testified Defendants did not "actively promot[e] unwanted sexual encounters."  (*Id.*

8    at 136:7-10.)  He also indicated he never told any prison official about these "encounters,", but he

9    simply asked a tower officer (who is not a defendant) to move cells because he and his cellmate

10   were "incompatable [sic]."  (*Id.* at 33-34.)

11        4.  <u>Administrative Grievances</u>

12        Plaintiff filed two administrative grievances relating to his claims.  On November 28,

13   2022, he filed a grievance complaining the strip searches on November 6 and November 28, 2022,

14   took place in the presence of other inmates and female officers.[11]  (ECF No. 27-12 at 11.)  The

15   grievance also complained the lack of in-cell barriers and the "see-through" doors and windows to

16   the cells "force[] the user of the toilet to reveal there [sic] private parts" to their cellmates and

17   create "uncomfortable sexual situations" with both their cellmates and "other prisoners who may

18   pass by the cell."  (*Id.* at 12.)  Defendant Bell in the Office of Grievances reviewed and denied the

19   grievance on February 8, 2023, because: (1) the strip searches complied with prison policy, and it

20

21   ─────────────────

22        as a result of the November 6th, 28th, and December 28th strip
         searches. What sexual assault have you experienced?
         A. I apologize because that assault occurred when I was in the -- when

23       I got moved.  I got moved because of those assaults and coercion.
         Q. Okay.

24       A. That was the whole purpose of me being in 7 block because of
         those kind of things that started to happen because there were no

25       privacy barriers.
     (*Id.* at 133:24-134:10.)

26   [10] Plaintiff does not describe these encounters or make a distinction as to which constituted
     "sexual assault" vs. "rape."  Because no distinction is made in the evidence, the Court refers to

27   these incidents generally as sexual assault.
     [11] In the <u>grievance</u> he asserted female officers were present for the November 6 search; he

28   specifically alleged female officers were not present for the November 28 search.  (ECF No. 27-12
     at 11.)

United States District Court
Northern District of California

"was not feasible to provide each inmate with a private location" for the searches as they were part of a "mass housing unit search;" and (2) in-cell barriers are "against policy due to safety and security." (*Id.* at 14-15.) Plaintiff appealed the denial, and on April 21, 2023, Howard Mosely (who is not a defendant) from the Office of Appeals denied the appeal on the same grounds as Bell. (ECF No. 27-7 at 9-10.)

On December 19, 2022, Plaintiff filed a second grievance which repeated the same claims as the first grievance regarding the strip searches and the cells' lack of in-cell privacy barriers and see through doors. (ECF No. 27-12 at 5-6.) In addition, he asserted, based upon these conditions, "This prison completely disregards prisoner['s] safety by continuously pooting [sic] prisoners in vernable [sic] sexual situations that set the stage for sexual harassment, sexual coercion, and sexual assault, and rape." (*Id.* at 6.) The grievance was "rejected" by the Office of Grievances as duplicative of the prior grievance. (*Id.* at 7.) Plaintiff appealed, and Mosely also denied the appeal because the claims were duplicative. (ECF No. 27-7 at 20.)

## DISCUSSION

### I. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

United States District Court
Northern District of California

At summary judgment, the judge must view the evidence "in the light most favorable" to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (citations omitted). If more than one reasonable inference can be drawn from undisputed facts, the trial court must credit the inference in favor of the nonmoving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

II.     Analysis

Plaintiff claims:

> Defendants "violated the Eighth Amendment of the United States Constitution by depriving Plaintiff and Plaintiffs 1-100[12] the right to be safe and to be housed under humane conditions and the right to be protected against cruel and unusual punishment when they subject[ed] Plaintiff and Plaintiffs JohnDoe 1-100 to open, non-constricted sexually vulnerable situations doring [sic] bodily functions and stripp searchis [sic] that placed inmates and officers male and female both in direct proximity as a term and condition of confinement.

(ECF No. 18 at ¶ 42.) He also claims:

> Defendant[s] violated the Fourth Amendment of the United States Constitution by facilitating unlawful searches and seizures when they strip[] searched Plaintiff and Plaintiffs JohnDoe 1-100 right in front of each other male and female both.

(*Id.* at ¶ 43.) The Court construes these allegations to assert the following two claims for the violation of his federal constitutional rights: (1) Defendants violated Plaintiff's Eighth Amendment right to be safe from harm by other inmates because the strip searches and the lack of in-cell privacy barriers around the toilets fostered sexual harassment, coercion, and assault by other prisoners (*see also id.* at ¶ 33 (alleging "open sexual nature creates[] and sets the stage for sexual harassment, sexual coercion, sexual assault, and rape amungs [sic] the prisoner population"); and (2) Defendants violated his Fourth and Eighth Amendment rights by causing him to undergo strip-searches in the presence of female officers and other inmates.[13]

---

[12] Plaintiff originally sought to bring this case on behalf of himself and other inmates, but he was not permitted to do so because he is not an attorney, no attorney is representing him, and the circumstances of incarceration render coordinated litigation efforts among multiple prisoners not feasible. (ECF No. 4 at 3 ("Plaintiff may proceed with this case, but if other inmates want to bring similar claims, they must do so in their own case.")).

[13] The order of service indicated Plaintiff's allegations regarding the strip searches and lack of privacy barriers stated cognizable claims under the Eighth Amendment. (ECF No. 17 at 3 (quoting ECF No. 4 at 2).) As discussed below, the case law analyzes strip searches of inmates under both the Eighth and Fourth Amendments. While the order of service did not also mention

Plaintiff also claims Defendants violated the 2003 Prison Rape Elimination Act ("PREA"), California regulations, and the DOM.  (ECF No. 18 at ¶¶ 44-57.)

    A.    <u>Plaintiff's Claim That Defendants' Failure to Protect Him from Sexual Harassment, Coercion, Assault and Rape from Other Prisoners Violated the Eighth Amendment</u>

The Eighth Amendment requires prison officials take reasonable measures to guarantee the safety of prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  *Id.* at 833.  The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety.  *Id.* at 834.  A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it.  *Id.* at 837.

    1.    <u>Objectively Serious Deprivation</u>

Plaintiff claims Defendants allowed other inmates to sexually harass, coerce, and assault him by strip-searching him in view of other inmates and by failing to install privacy barriers around the toilets in the cells.

    a.    <u>Strip Searches</u>

The evidence presented allows a rational trier of fact to conclude other inmates could see Plaintiff when officials conducted strip searches.  Although the searches were conducted in his cell

---

the Fourth Amendment, it cited two cases, one applying the Fourth Amendment and the other applying the Eighth Amendment.  (*Id.* (citing *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011) (en banc) (finding strip search practices unreasonable under the Fourth Amendment), and *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012) ("Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment.")).)  The order of service would have been clearer if it had explicitly identified the Fourth Amendment and not simply cited to *Byrd*, but this omission did not prevent Plaintiff from briefing the Fourth Amendment issue as he cited numerous Fourth Amendment strip-search cases in his opposition. (ECF No. 37 at 5-6.)  Even Defendants themselves rely on two Fourth Amendment cases to support their argument on the strip-search claim.  (ECF No. 27 at 24-26 (citing *Michenfelder v. Summer*, 860 F.2d 328, 332-34 (9th Cir. 1988), and *Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985).)  Consequently, the Court finds it appropriate to address the Fourth Amendment aspect of the strip-search claim without further briefing.

United States District Court
Northern District of California

or in the doorway of his cell, and he did not have a cellmate, there is evidence the doors to his cell were see-through.  Moreover, Plaintiff's testimony supports the rational inference the strip searches led to an increase in sexual harassment and coercion, which consisted of sexually explicit "comments" and "banter[]" towards him from other inmates.  (ECF No. 27-1 at 118:13-15, 126:3-9, 130:24-131:11, 131:15-132:10.)  Based on Plaintiff's deposition testimony, the searches did not lead to sexual assault.  (*Id.* at 133:24-134:10.)

The Court is aware of no authority and Plaintiff cites none, providing verbal sexual harassment from other inmates violates the Eighth Amendment.  Sexual harassment by *prison officials* violates the Eighth Amendment.  *See*, *e.g.*, *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012) (holding Eighth Amendment violated by prison guard who engaged in coercive and physical sexual relationship with inmate).  But even when the harassment comes from prison officials, "[t]he Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment."  *Blueford v. Prunty*, 108 F.3d 251, 254-55 (9th Cir. 1997) (holding prison guard who engaged in "vulgar same-sex trash talk" with inmates was entitled to qualified immunity) and *Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir. 1997) (holding officials "gawking, pointing, and joking" at inmates during strip searches and showers did not violate the Eighth Amendment)).

If verbal sexual commentary from officials to inmates—a relationship in which "the power inequities" are akin "to adults and minors, teachers and students, and owners and slaves" and "foster opportunities for sexual abuse," *Wood*, 692 F.3d at 1047—does not amount to a deprivation that implicates the Eighth Amendment, then no rational fact-finder could conclude verbal sexual harassment from other inmates, in which there is no evidence of such a power disparity, was an objectively serious deprivation under the Eighth Amendment.

Therefore, viewing the evidence in a light most favorable to Plaintiff, there is no triable issue as to whether the strip searches presented a risk to Plaintiff's safety at the hands of other inmates that implicated his Eighth Amendment rights.  Even if they did, moreover, for the reasons discussed below, there is no triable issue as to whether Defendants were deliberately indifferent to this risk.

b.    Lack of Privacy Barriers

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff cites no case law, nor is there any authority of which the Court is aware, the lack

2    of in-cell privacy barriers, on its own, amounts to an objectively serious deprivation that

3    implicates a prisoner's Eighth Amendment rights.  In the Fourth Amendment context, prisoners do

4    not generally have a right to privacy in cells because "it would be literally impossible to

5    accomplish the prison objectives . . . if inmates retained a right of privacy in their cells."  *Hudson*

6    *v. Palmer*, 468 U.S. 517, 527 (1984); *cf. Wilkins v. Macomber*, No. 2:16-CV-0475-TLN-DMC-P,

7    2023 WL 2529660, at *5 (E.D. Cal. Mar. 15, 2023) (finding no Eighth Amendment violation

8    based on the fact that prisoner had "to expose his private body parts to his cellmate when he

9    urinated, defecated, and/or bathe[d]").

10    The only evidence Plaintiff presents supporting his contention the lack of in-cell privacy

11    barriers around the toilet is sufficiently dangerous to implicate the Eighth Amendment is his

12    deposition testimony that in the past he suffered "unwanted sexual encounters" from his cellmate

13    after using the toilet.  (ECF No. 27-1 at 12, 116:12-117:1.)  To be sure, sexual assault by another

14    prisoner implicates a prisoner's Eighth Amendment rights.  *See Farmer*, 511 U.S. at 834 (being

15    raped by another inmate is an objectively serious deprivation under the Eighth Amendment).

16    However, that these unspecified "encounters" occurred at some unknown time after he used the

17    toilet does not, without more, support a finding they were *caused* by him being seen using the

18    toilet, as opposed to some other factor or something particular to Plaintiff's then-cellmate.  The

19    undisputed evidence establishes no other prisons in California have in-cell privacy barriers,[14] but

20    there is no evidence Plaintiff was previously assaulted by additional cellmates, or that any other

21    inmates have been sexually assaulted by their cellmates, because they were seen using the toilet.

22    (ECF No. 27-8 at ¶ 14 ("No prison within CDCR has in-cell privacy barriers at the level IV

23    security setting").)

24    Based on the evidence in the record, a rational fact-finder could not conclude the lack of

25    in-cell privacy barriers was an objectively serious deprivation under the first prong of the Eighth

26    Amendment analysis.  But even assuming the absence of in-cell barriers around the toilets

27

28    [14] Plaintiff's assertion to the contrary is too vague to create a genuine factual dispute on this issue
because he does not identify any other institutions that have them.  (ECF No. 27-1 at 119:6-10.)

satisfied the objective prong of the Eighth Amendment test, for the reasons described below, there is no evidence supporting an inference Defendants were deliberately indifferent to the risk the absence of such barriers endangered Plaintiff.

### 2. Deliberate Indifference

There is no evidence from which a fact-finder could conclude Defendants were deliberately indifferent to an excessive risk Plaintiff would suffer sexual assault or other serious harm from a lack of in-cell privacy barriers around the toilet or from the strip-searches.

A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, that is, the official knows of and disregards an excessive risk to inmate safety by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See id.* An Eighth Amendment claimant need not show a prison official acted or failed to act believing harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id.* at 842

### a. Lack of Privacy Barriers

Even if the evidence supported a rational inference the lack of privacy barriers around in-cell toilets created an excessive risk to inmates, such as Plaintiff, would be sexually assaulted by their cellmates, there is no evidence Defendants knew about this risk. In his amended complaint, Plaintiff alleges Defendants were informed of such a risk (ECF No. 18 at ¶ 34), but there is no evidence to support that allegation. Plaintiff admits he did not inform any of the Defendants about the sexual assaults he suffered, let alone that they were due to not having privacy barriers around the toilet in his cell. (ECF No. 27-1 at 33-34.) The only evidence any Defendant was alerted to any issue relating to the privacy barriers is the evidence Defendant Bell reviewed the first of Plaintiff's administrative grievances; there is no evidence any other Defendants saw it. (ECF No. 27-12 at 14-15; *see also* No. 27-7 at 9-10. (appeal of grievance reviewed by Moseley, who is not a defendant).) That grievance, however, only asserted the barriers created "uncomfortable sexual situations" and did not mention "unwanted sexual encounters" or sexual assault. (ECF No. 27-12

13

at 12.)  A rational fact finder cannot conclude Defendant Bell knew from Plaintiff's grievance Plaintiff was asserting sexual *assaults* were caused by the lack of in-cell privacy barriers.  And while Plaintiff did assert in his *second* grievance "sexual assaults and rape" were caused by the lack of privacy barriers, there is no evidence any of the Defendants reviewed that grievance.  (*Id.* at 6-7; *see also* ECF No. 27-7 at 20.)

Moreover, simply informing Defendants Plaintiff believed the lack of in-cell privacy barriers increased the risk of sexual assault would not on its own necessarily create a triable issue as to whether failing to install such amounted to deliberate indifference to his safety under the Eighth Amendment.  In addressing a prisoner's claim that prison officials violated the Eighth Amendment by failing to protect him from violence by other prisoners, courts should defer to the judgment of prison officials "unless the record contains substantial evidence showing that their policies are an unnecessary or unjustified response to problems of jail security, or that the officials have exaggerated their response to security considerations."  *Fierro v. Smith*, 39 F.4th 640, 648 (9th Cir. 2022) (internal citations and quotations omitted) (quoting *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 322-23 (2012), and *Pell v. Procunier*, 417 U.S. 817, 827 (1974)).

Here, Defendants have presented evidence installing "in-cell privacy barriers would create a large zone within cells that officers could not see from outside" the cells, allowing inmates to hide "activities or items that would violate CDCR polices," require officers to go into the cells to investigate, and thereby "severely endanger officers."  (*See*, e.g., ECF No. 27-8 at ¶¶ 12-13.)  This evidence is not contradicted by any evidence in the record.  Plaintiff asserted in his deposition in-cell barriers would cause no more security problems than a table or desk.  No rational fact-finder could make such an inference, however, because a vertical barrier of a privacy screen would conceal far more activity from an officer standing outside a cell looking in than the horizontal top of a desk or table.  Plaintiff also asserted barriers should be put in the cells because toilets in other areas of the prison, such as "the unit" and "the recreational room on the small yard," have such barriers.  (ECF No. 18 at ¶ 32; ECF No. 27-1 at 119:10-13.)  That such areas outside of the cells have barriers does not support a reasonable inference in-cell barriers do not pose a significant security risk because it can reasonably be inferred there are greater security risks for barriers

inside cells where inmates are likely to spend the majority of their time.  Indeed, the existence of such barriers in public toilets supports a reasonable inference prison officials did not make an across-the-board decision against the privacy barriers as a whole; rather, it is consistent with Defendants' evidence officials considered inmate privacy interests, but determined such interests were outweighed by the particular security problems of putting such barriers inside cells.  (*See* ECF No. 27-8 at ¶¶ 12-13 ("Providing such a large zone [inside the cells] that cannot be viewed by officers without entering the cell would severely endanger officers while only providing minimal privacy to the inmates."); *see also* ECF Nos. 27-2, 27-3, 27-5, 27-6, 27-11, 27-13, 27-14 at ¶ 6 (same).)  For these reasons, the record does not contain "substantial evidence" supporting a reasonable inference that failing to place privacy barriers around toilets inside cells was "unnecessary or unjustified" or "an exaggerated response to security concerns," *Fierro*, 39 F.4th at 648, so as to amount to deliberate indifference to Plaintiff's safety needs

The Court thus concludes there is no triable factual issue as to whether the lack of in-cell privacy barriers constituted deliberate indifference to Plaintiff's safety from harm from other inmates in violation of his Eighth Amendment rights.

### b.   Strip Searches

Similarly, even if the strip searches posed a sufficiently serious risk of harm to Plaintiff to satisfy the objective prong of the Eighth Amendment test, there is no triable issue as to whether Defendants were deliberately indifferent to such a risk.  As discussed above, Plaintiff asserts the searches caused him to suffer verbal sexual harassment and coercion from other prisoners.  The evidence that Defendants knew of such a risk is scant.  No rational inference can be drawn the administrative grievances informed Defendants of such a risk; the grievance Defendant Bell (the only Defendant who reviewed either grievance) reviewed did not mention the terms "sexual harassment" or "sexual coercion," or that Plaintiff suffered any form of verbal harassment from other inmates.  (ECF No. 27-12 at 11-12.)  A rational fact-finder could infer from the evidence that other inmates could see Plaintiff during his three searches and that this led to the verbal sexual harassment from them, that Defendants heard the verbal harassment and knew that it followed such searches.  However, there is undisputed evidence Defendants took steps to mitigate this risk

by having the searches inside or in the doorway to Plaintiff's cell, as opposed to in public areas. There is also uncontradicted evidence showing the searches were conducted during mass, building-wide searches of inmates, and "staffing and security concerns make it impossible to remove each inmate and take them to private cells to conduct unclothed body searches." (ECF Nos. 27-7 at 9; 27-8 at ¶ 9.) Moreover, for the reasons discussed below in the Fourth Amendment analysis, the record does not support a rational inference the strip-search practices were an "exaggerated or excessive means to enforce security," *Michenfelder v. Summer*, 860 F.2d 328, 333 (9th Cir. 1988), a showing that is required to establish deliberate indifference under the Eighth Amendment. *Fierro*, 39 F.4th at 648 (holding deliberate indifference requires showing officials' actions were "unnecessary or unjustified" or "exaggerated" response to security needs). The evidence in the record does not support a rational inference the strip searches were performed with deliberate indifference to the risk of verbal sexual harassment or other harm to Plaintiff, and accordingly there is no triable factual question on this issue.

*          *          *

There are no triable issues as to whether the strip searches and the lack of privacy barriers around the in-cell toilets in the cells violated Plaintiff's Eighth Amendment right to safety. Consequently, Defendants are entitled to summary judgment on this claim.

> B.   <u>Plaintiff's Claim That Searches in Presence of Female Officials and Other Inmates Violated His Fourth and Eighth Amendment Rights</u>

Plaintiff claims Defendants violated his Fourth and Eighth Amendment rights because he was strip-searched in view of female officers and other inmates. Challenges to cross-gender strip-searches of inmates are analyzed under both the Fourth and Eighth Amendments. *See Jordan v. Gardner*, 986 F.2d 1521, 1524 (9th Cir. 1993) (en banc) (acknowledging but not reaching Fourth Amendment analysis of strip searches and discussing cases); *id.* at 1525-31 (analyzing cross-gender strip search under Eighth Amendment).

> 1.   <u>Fourth Amendment</u>

Under the Fourth Amendment, prisoners and pretrial detainees in institutional settings may be subjected to strip searches and body cavity searches if they are conducted in a reasonable

manner.  *See Bell v. Wolfish*, 441 U.S. 520, 561 (1979).  The reasonableness of a particular search of prisoners must be considered with reference to the prison context to determine whether they are reasonably related to a legitimate penological purpose.  *Michenfelder*, 860 F.2d at 332-34 (applying *Bell*, 441 U.S. at 559, and *Turner v. Safley,* 482 U.S. 78, 89-91 (1987)).  The prisoner bears the burden of showing prison officials "intentionally used exaggerated or excessive means to enforce security" in conducting a search.  *See id* at 333.

In *Byrd v. Maricopa Cnty. Sheriff's Dep't*, the Ninth Circuit found cross-gender strip searches that involved touching the inmate's genitalia and searching inside his anus to be unreasonable under the Fourth Amendment in a non-emergency situation.  629 F.3d 1135, 1142 (9th Cir. 2011) (en banc).  This case is readily distinguishable from *Byrd* insofar as the evidence is undisputed here that the searches did not involve touching, and there is no evidence female officers ever conducted strip searches except in emergencies.  *Cf. id.* at 1142.

Rather, the facts of this case are similar to *Michenfelder*, in which:

> Strip searches are conducted every time a Unit Seven inmate leaves or returns to the unit, as well as after movement under escort within the unit, such as for sick call, recreation, disciplinary hearings, and visits. The strip searches complained of here include visual body cavity searches, but not physical contact searches. They are conducted at the end of the tier's hallway, in front of a barred gate behind which the guards conducting the searches stand (in an area known as the "sally port"). The searches are visible to the tier's other prisoners whose cell doors open onto the corridor, and, through a small window, to guards controlling the cell doors from the "lock box" located in the main corridor outside the tier. The searches also can be observed indirectly by officers in the "control bubble", a room with video screens for monitoring activity on the tiers by means of video cameras located at either end of the hallways. Female officers are permitted to work in the control bubble, at the lock box, and any other position available to a correctional officer (including shower duty). They do not conduct strip searches except in severe emergencies.

860 F.2d at 330.  The court held the searches reasonable under the Fourth Amendment because they were "visual, involving no touching," involved prisoners in "the most restrictive" security level, and "conducting the searches in the cells," " transporting inmates to less public locations elsewhere in the prison," or "remodeling the facility to prevent other inmates from observing the searches through their cell doors" would "require additional officers" and "be costly."  *Id.* at 332-

33.

Here, as in *Michenfelder*, the searches were visual, did not involve touching, and took place in the prison's highest security unit.  The evidence also establishes here, as in *Michenfelder*, female officers were assigned to positions in which they would incidentally see prisoners during searches, but there is no evidence they conducted such searches except in emergencies.  While searches were visible to other inmates if they looked through the cell doors, the searches were less public than those in *Michenfelder* because they took place in the cell or the entry to the cell.  There is also no evidence the searches here were as frequent as those in *Michenfelder*, which occurred "every time" the inmates had "sick call, recreation, disciplinary hearings, and visits," or left the unit, *id.* at 330, whereas here the evidence only shows three searches over two months.  Under *Michenfelder*, the evidence here, even when viewed in a light most favorable to Plaintiff, does not support a conclusion the searches were unreasonable under the Fourth Amendment.

Moreover, in *Michenfelder*, the court went on to conclude that the fact the female officers could see inmates naked during searches and while taking showers did not violate the inmates' "limited" right to privacy under the Fourth Amendment.  *Id.* at 333-34.  The "issue is whether [] female officers regularly or frequently observe unclothed inmates without a legitimate reason for doing so."  *Id* at 334 (citing *Grummett v. Rushen*, 779 F.2d 491, 494-495 (9th Cir. 1985), for the proposition that female officers' "observations of nude male prisoners were infrequent and casual, or from a distance" is constitutional).  The court also identified the following legitimate penological reason for assigning female officers to positions in which they might see male prisoners naked:

> Prohibiting female employees from working in the control bubble, or requiring them to be replaced by males for the duration of strip searches, would displace officers throughout the prison. The prison's current allocation of responsibilities among male and female employees already represents a reasonable attempt to accommodate prisoners' privacy concerns consistent with internal security needs and equal employment concerns.

*Id.* at 334.

Here, there is no evidence supporting a reasonable inference "female officers regularly or frequently observed" Plaintiff while unclothed, or they did so "without a legitimate reason."  *Id.* at

334.  At most, the evidence of female officers seeing Plaintiff during the strip searches is that during one search (on November 6, 2022), two female officers saw him, one of whom was in a control tower, and during another (on December 30, 2022), two female officers walked past and glanced at him.  Such incidental viewing is far less frequent than that of female officers stationed to a shower position, which the court in *Michenfelder* held constitutionally permissible.  *See id.* So, no rational fact-finder could determine from the evidence that any observation of Plaintiff by female officers during the strip-searches was more than "infrequent and casual, or from a distance" or that it was unrelated to these officers legitimately carrying out the duties of their assigned positions.  *See id.*; *see also Grummet*, 779 F.2d at 794-95 (upholding system of assigning female officers within a correctional facility such that they occasionally viewed male inmates in various states of undress and conducted routine pat-downs of fully clothed inmates).  Viewing the evidence in a light most favorable to Plaintiff, it does not establish a violation of his privacy rights under the Fourth Amendment.

For the foregoing reasons, there is no triable issue as to whether the strip searches violated Plaintiff's Fourth Amendment rights.

### 2.  Eighth Amendment

The Eighth Amendment standard is higher than the reasonableness standard of the Fourth Amendment.  To violate the Eighth Amendment, the strip search must have amounted to an "'unnecessary and wanton infliction of pain.'"  *Jordan*, 986 F.2d at 1524 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (finding Eighth Amendment violation where male officers conducted "routine cross-gender clothed body searches" of female inmates in which they "thoroughly" ran their hands over the inmates' bodies and "squeez[ed] and knead[ed]" the seams in the crotch and upper thigh).  *Jordan* is readily distinguishable from this case.  Here, the searches did not involve touching, were only permitted by a different gender in an emergency (not routinely), and did not involve male officers searching female inmates.  *Cf. id.* at 1526 (emphasizing many female inmates' history of abuse and the "psychological differences between men and women").  In *Somers v. Thurman*, 109 F.3d 614 (9th Cir. 1997), the circumstances were more egregious than the evidence here insofar as the female officers "subjected Somers to visual

body cavity searches on a regular basis" and engaged in "gawking, pointing, and joking," and yet this conduct did not violate the Eighth Amendment.  *Id.* at 616, 622-23.  As there is no triable issue as to whether the searches in this case were unreasonable under the Fourth Amendment, there is no triable issue as to whether they met the considerably higher Eighth Amendment standard of constituting a wanton and unnecessary infliction of pain.

3.   Plaintiff's Citations to Case Law

In his opposition, Plaintiff cites to *Jordan*, *Michenfelder*, and *Somers*, but, for the reasons discussed above, these cases are distinguishable or do not support his claims.  (ECF No. 37 at 5-6.) The other decisions he cites are not binding on this Court because they are from other circuits, (*see* ECF No. 37 at 5-6), and are, in any event distinguishable. The following cases involved searches under more invasive and egregious circumstances than in this case: *Hayes v. Marriot*, 70 F.3d 1144, 1148 (10th Cir. 1995) (finding body cavity search conducted in front of "100 people" "including female secretaries and case managers from other buildings" and videotaped by prison officials violated Fourth Amendment); *Farmer v. Perrill*, 288 F.3d 1254, 1260-61 (10th Cir. 2002) (finding Fourth Amendment violation where female prisoner housed with male inmates (because she was biologically male) searched in public areas in front of male inmates without evidence justifying reasons for doing so); *Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009) (finding Fourth Amendment triable issue where evidence showed searches were done daily, in view of other inmates, in a cold room, by guards who touched them without regularly changing gloves and made "demeaning" comments).

The following also involved more egregious circumstances than those present here, and they were at the pleading-review stage, not summary judgment: *Hutchins v. McDaniels*, 512 F.3d 193, 196 (5th Cir. 2007) (finding plaintiff stated a claim for Fourth Amendment violation based upon allegations of a search in the dayroom of prison in front of inmates and guards and required to hop around on one foot, while searching officer made a "lewd smile"); *Calhoun v. De Tella*, 319 F.3d 936, 939-40 (7th Cir. 2003) (finding Plaintiff stated a claim for violation of his Fourth Amendment rights based upon allegations that during the searches, "officers sexually harassed him through behavior unrelated to legitimate prison needs," "made 'ribald comments' and

1  sexually explicit gestures during the search," "forced him to perform sexually provocative acts,"

2  and "female guards present during the search were neither mere passersby nor performing the

3  legitimate penological function of conducting or monitoring the search; they were instead invited

4  spectators").  Accordingly, these cases do not alter the Court's analysis of Plaintiff's strip-search

5  claim.

6                              *                    *                    *

7          The Court concludes there is no triable issue as to whether Defendants violated Plaintiff's

8  Fourth and Eighth Amendment rights in connection with the strip searches.[15]

9          3.          PREA, California regulations, DOM

10         Plaintiff claims Defendants violated PREA by not installing in-cell privacy screens and

11  allowing sexual harassment and "unwanted [] sexual encounters."  (*See* ECF No. 18 at ¶¶ 48-51,

12  57.)  For a federal statute to be privately enforceable under Section 1983, it must create an

13  individual right.  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  All of the decisions of which

14  the Court is aware have found PREA does not create a private right of action.  *See Krieg v. Steele*,

15  599 Fed. Appx. 231 (5th Cir. 2013) (collecting cases holding PREA does not create a private right

16  of action); *Blair v. Herrera-Salazar*, No. 3:19-cv-01261-DMS-KSC, 2019 WL 13448296, at *5

17  (S.D. Cal. 2019) (collecting cases); *Gonzalez v. Chriese*, No. 16-cv-00741-SI, 2016 WL 3231284,

18  at *4 (N.D. Cal. 2016) (Illston, J.); *Hatcher v. Harrington*, No. 14–00554 JMS/KSC, 2015 WL

19  474313, at *5 (D. Hawai'i 2015) (collecting cases ); *De'lonta v. Clar*ke, No. 7:11–cv–00483, 2013

20  WL 209489, at * 3 (W.D. Va. 2013) (collecting cases).  The Court is not aware of any Supreme

21  Court or published federal appellate court decisions addressing this issue, nor does Plaintiff cite

22  any.  A review of the above decisions, and the absence of any contrary cases, persuades this Court

23  PREA does not create a private right of action under Section 1983.  *See Hatcher*, 2015 WL

24  474313, at *5 ("Congress enacted the PREA to address the problem of rape in prison by (1)

25  creating a commission to study the issue and recommend national standards to prevent, detect, and

[15] In light of the Court's conclusion that there is no triable factual issue on Plaintiff's claims, it does not reach Defendants' alternative arguments based upon exhaustion, supervisory liability, and qualified immunity.

respond to prison rape; (2) applying such national standards to state and federal agencies and departments that maintain prisons or detention facilities; and (3) conditioning eligibility for federal grant money on compliance with such standards.").

Plaintiff claims Defendants also violated provisions of the DOM, California regulations, and a California Assembly Bill – AB 550 (2005).  (ECF No. 18 at ¶¶ 44-47, 52-55.)   Section 1983 does not impose liability for violations state law.  *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 201-03 (1989).  Moreover, Plaintiff does not cite any authority, nor is the Court aware of any, that individuals have a private right of action to sue for a violation of the DOM or these regulations.

Accordingly, Defendants are entitled to summary judgment on these claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. This Order disposes of Docket No. 27.

**IT IS SO ORDERED.**

Dated: March 29, 2024

JACQUELINE SCOTT CORLEY
United States District Judge